So with that, we'll call the case of Security Insurance Company of Hartford v. Machevsky. Good morning, Your Honor. Jerry Kaplan on behalf of the appellant, Nick Machevsky. You ought to say that again in front of the microphone. I apologize. I was walking, and I guess I spoke too quickly. Jerry Kaplan on behalf of – good morning, Your Honors. Jerry Kaplan on behalf of Nick Machevsky, the appellant. And I think basically the briefs cover most of what I want to tell the court, but I will tell the court briefly this in my opening argument. The affidavits of Nick Machevsky clearly indicate that this artwork was a family heirloom brought from Russia. And this is a noble review of that issue. That must be taken at its face value. Counsel, I guess my difficulty with your client's position is the following, and tell me where this is wrong. If he had an insurable interest and he had insurance, then it would seem that the insurance proceeds would belong to the trustee in bankruptcy. If he didn't have an insurable interest, then he didn't have valid insurance. But either way, how can he possibly prevail? I suppose it's because of this. An insurable interest in California allows you to have possession and expectancy of a – something in the future. That can be not in a bankruptcy court, assuming I had possession and I was going to be left this, an expectancy that somewhere down the road his grandmother is going to leave him these items, or through his mother. I could have those items, and I could list them in bankruptcy, and they would not be part of the estate. Why? Because the same standards don't apply to the bankruptcy, what the trustee takes over, as what an insurable interest is. I understand that what you're suggesting is, why should he get this windfall from the insurable interest when it should be the trustees? But in the bankruptcy estate, if you take a look at what the bankruptcy trustee would take over as in a bankruptcy, it would have to be something that's left to you by will that ripens in 180 days. But the insurance contract itself, the potential right to receive contractually obligated funds from an insurance company, itself was something that had to be listed in bankruptcy, isn't it? No, the insurance contract would not have been listed in bankruptcy, and never would be listed in bankruptcy, nor do they argue that. What would be listed in bankruptcy is his possessory interest in these heirlooms, indicating that he doesn't own them, but he's hoping that he'll get them at some point in time. The insurance contract, and I might note that he told this to the insurance company. So what you're putting me on this horn, I understand the horn's a dilemma, but you're putting me on here saying if, in fact, I, as an individual, have a right to receive insurance proceeds if something happens, shouldn't that insurance contract be put into bankruptcy? But that's not, I don't even believe the bankruptcy called for that insurance contract,  There is a line item for revealing insurance policies, isn't there, in the bankruptcy proceeding? All right. I don't know. I mean, I don't think it was argued in this. I didn't see that in the papers. But I assume there is a line item for insurance policies. Are you suggesting the trustee could garnish that insurance policy, would keep making payments on that insurance policy when, in fact, he would have no interest in the artwork? And I'm suggesting to this Court, why would he keep paying that if he had no interest in the artwork? Let me ask, Counsel, what's the sequence of events? When did the theft take place in terms of when the bankruptcy was filed? I think it's much later after his discharge. That the theft occurred? Correct. What happens is the theft occurs. I mean, he gets bankruptcy, he gets discharge, and then the theft occurs. So that the theft doesn't occur prior to the bankruptcy. Now, he doesn't forget to list it. It doesn't occur during the bankruptcy. It occurs much after the bankruptcy. Or he would have amended his schedules, I assume, if this became an issue. But it didn't become an issue, and that's why it was only raised later on as a defense that he had gone bankruptcy, I think, a year or two before, and was discharged a year or two before this occurred. But even at the end, does that answer your question? Yes. All right. He didn't list the artwork on his bankruptcy schedules, correct? Correct. And does it make him judicially a stop from claiming it? No. And the reason for that is, is because the Ninth Circuit has always taken the position that you have to have some detriment, have to gain some advantage. What advantage could this young man possibly gain by having family heirlooms of his family? If he had listed them as a bankruptcy asset, the bankruptcy court will say, well, you don't own them. You have an expectancy of a future interest if grandmother and mother dies. And therefore, the trustee wouldn't have any part of them. He could still possess them. The argument of the other side is that they could have determined whether he owned them or not in a bankruptcy court and whether or not they were heirlooms. I might note, however, that even at the time he obtained the insurance by affidavit, the insurance company knew they were heirlooms, and he solely possessed them. So my answer to your question is, the bankruptcy court, he gained no unfair advantage in the bankruptcy court, nor would he have had, nor would the trustee have any right to take those properties. They really didn't belong to him. All they belonged to is his, he had an interest at the end of the day. That word always escapes me. At the end of the day, if his grandmother and mother died. And that is sufficient for an insurable interest, but it's not sufficient for the trustee to gain any ownership. And therefore, he gained no advantage by forgetting to list them. Does the bankruptcy schedules require listing of possessory interests? Yes. And that's where he made the mistake. But the Ninth Circuit doesn't say for every mistake, or your predecessors haven't indicated for every mistake, we're going to judicially estop you after paying all these insurance premiums. Isn't judicial estoppel really what we're trying to get at? We don't want you to take unfair advantage of the legal system. We don't want you to gain a benefit by taking inconsistent positions. Well, if the insurance policy had to be listed as an asset of the bankruptcy estate, and the proceeds would have belonged then to the creditors, if that is, in fact, correct, then wouldn't your client be gaining an unfair advantage by obtaining those proceeds for himself? Can I answer you yes and then explain why it doesn't apply in this case? Sure. I answer you yes. Assuming that at the time of the bankruptcy, he was in litigation to get these items, I think the other justices. I didn't say in litigation. If he was required to list the insurance policy. All right. Let's say you list the insurance policy in the bankruptcy schedules. There's no insurance loss. He's discharged. He gains no unfair advantage because the trustee isn't going to make payments on insurance that he is going to get nothing from. The bankruptcy court has no right to the artwork, and if it happens a year later, what really occurs is that he would have never gained an unfair advantage unless he duped the court because the theft occurred prior to the loss prior to his filing bankruptcy. Let's assume you get discharged and then you buy an insurance policy because this is really what occurs here. You have your artwork from your mother and your grandmother from Germany. They survived. They brought it to the United States. He goes bankrupt. He possesses his items. He lists them in the bankruptcy estate as well as the insurance contract. There's nothing lost. No one's going to make payments because there's no asset for the insurance company, I mean for the trustee to take over. No asset. He doesn't own the artwork. It's his grandmother's. The insurance contract is no benefit for the trustee because nothing has occurred. He goes bankrupt. He gets discharged. He starts making payments again. This is exactly what happens in this case, except he forgets to list these two items. A theft occurs. What advantage? Because if a theft occurs then, the creditors never get any money because it's really his insurance policy that comes into effect that no one would have taken advantage of in bankruptcy because we look back two years and we say, oh, well, now he failed to list them. This is what Hartford's doing, even though he paid premiums after he got out of bankruptcy. And the bankruptcy court would have never taken any of those assets, couldn't have taken any of those assets. They weren't his and would get no benefit from the insurance policy because nothing was stolen yet. Does that answer your question? Because you're looking at it all in essence, and I agree, had the theft taken place while he was in bankruptcy or before he was in bankruptcy, he would be duping the court, beating the creditors out of their money. But under this scenario, it's obviously he gained no advantage, none. I mean, practically, legally, there's no theory where a trustee would take over an insurance policy on assets he could never have. It would make no sense. You're looking at me somewhat hesitant, but I mean, go ahead. I suppose had those assets been listed, the trustee could have held a hearing as to exactly what the interest of your client was. Maybe your client actually had been given those items by the, we don't know what that is. I happen to agree with that as well. I'm going to go your way on that one. However, that doesn't gain him an advantage. That gives him a different audience to be heard. Oh, sure, it gives him an advantage because if Judge Fletcher's scenario is correct and he actually owned the items, they would have been available to creditors. In other words, if he'd owned the artwork outright, if that were the finding, then the artwork would have been available to creditors. I agree with you. So that's why if he in fact owns the artwork, judicial estoppel applies, no doubt about it. But the issue in this case is does he own the artwork? And this is a summary judgment. One has to determine whether he owns the artwork, a trier of fact. We say he didn't own the artwork. We can trace the history of the artwork. We have the first insurance policy saying I don't own the artwork. It's my grandmother's. We brought it in from a foreign country. I'm the possessor of this artwork. The judge decided, and erroneously because I'm based on affidavits, you have to draw the inferences most favorable to my client. And the inferences most favorable to my client are that he only had the artwork as an inheritance down the road. He was going to be a beneficiary of a couple of deaths, and then he was going to have it, and these women let him keep it. Now, if he would have had that determined in bankruptcy court and the bankruptcy court determined it was only his possessory interest he was going to inherit it down the road, then we would all agree he shouldn't be judicially estopped. On the other hand, we would all agree if he actually owned it, he should be judicially estopped. And that's where it lies about summary judgment. You have to draw, I mean, the law indicates you should draw inferences towards the party that you have to let the prior fact decide whether he owns it or not. And isn't it in this case a jury to make that decision? Isn't one of the issues for the jury in this case, did he own it, didn't he own it? Once that determination is made, isn't that when a court could apply judicial estoppel on an abuse of discretion standard as to whether he owned it or didn't own it? Well, we have to make that determination first. And that's why you don't gain an advantage by that determination. It's just a different forum where you're making that determination. And that's my answer to your question. Any other questions? No. Not at the moment. You may want to save the rest of your time for rebuttal. Thank you, Your Honor. Good morning. May it please the Court, my name is Mike Lakin and I represent Security Insurance Company of Hartford. Your Honor, summary judgment was appropriate because Machevsky admitted everything that the district court needed to find that it could apply judicial estoppel and separately that as a matter of law, whatever insurable interest Machevsky may have had was transferred to the bankruptcy trustee and filed for bankruptcy. It was not returned to him and therefore he did not have one and could not have had one on the date of the loss. And under California law, he is not entitled to recover. What would your view be of what would happen in the bankruptcy court had he listed the insurance policy but the loss had not occurred? In other words, he simply says, I have possession of some items. I think I have an insurable interest and here's the insurance policy. Well, that's the whole point of the judicial estoppel. The trustee, the court could have made a determination, is he an owner or is this just purely a future expectancy that would not be part of the estate? Well, what difference does it make with respect? I understand easily what difference it makes if the objects themselves were part of the bankruptcy estate because they have considerable value, had considerable value, and would have affected the position of the creditors. But the insurance policy itself, just as a contract, what difference would that insurance policy alone have had? In other words, what's the specific effect in bankruptcy of failing to list the insurance policy as distinct from the artwork itself? That is why we did not make that an issue here. I don't think whether or not, other than alerting the trustee to the possession of half a million dollars' worth of artwork, the contract itself at that point, I don't know that it had any value to the estate. However, I'd like to point out, Your Honor, the trustee then would have had, had the bankruptcy court then been alerted to his possession, they would have also been alerted to whatever facts it were that made Mr. Maciejewski swear under oath in his statement and in his deposition that he actually had an ownership interest and not just this vague future expectancy. Now, for purposes of summary judgment, why isn't there an issue of fact as to intent? In other words, his claim is that at least with respect to not listing the objects, again, as distinct from the policy, that someone gave him bum advice and he reasonably relied on it not to list those items. Don't we have to take that as true? And if so, what relevance does that have in your view for the judicial estoppel analysis? Well, actually, that's not what he said. In his declaration, he said, I did not list them because I didn't think I was supposed to list things, or I only thought I was supposed to list things for which I was the sole owner. I thought he also said somewhere in these papers that a paralegal had given him advice that these materials need not be listed. I think what they did was they submitted the declaration to the paralegal, who said we discussed it and decided not to list it. Okay. So given that, given that, okay, I'm sorry, Your Honor. My point being that whether it was Maciejewski or the paralegal, either way there was a calculated decision not to list this. This was not a matter of somebody saying, oh, let's attach the schedule, and somebody didn't staple this to the paper, and it was all submitted by accident. There was a calculated decision. So your view is that it applies any time there's a conscious decision, even if it's innocent in the sense of you can't prove bad motive. Yes, because that's basically what the International Harvester case says, the California case, and also I believe there was a case cited in the reply papers, a Federal Ninth Circuit case which said the same thing. And that was, pardon me, Your Honor, I'm sorry, I lost in my notes the reference to the case, but it was one where one party took the position, took one position in court, and then later in a following proceeding said, well, had we known what was inside these privileged paper, privileged attorney papers that were not given us in the other proceeding, we wouldn't have taken that position. And the Court said, well, that's too bad. You made a decision not to go after that other information, took your position, and now you're going to have to live with it. Well, if they mistakenly thought that they did not have to list items which they didn't own, why is it, why would you apply judicial estoppel? I don't understand. Well, because one of the questions doesn't ask whether you own them or not. It says, do you, are you holding any property for anybody else? That has absolutely no application to whether or not he thought he owned them or not. It says, are you holding anything for anybody else? If so, and again, this was not one or two heirlooms. This was 200 items. So you're saying that just by the circumstances and the nature of the questions, one could not draw the conclusion that it was entirely innocent. Oh, absolutely, because it has nothing to do with the Statement of Financial Affairs. It says, list everything you're holding for anybody else. And if I may point out, in one of the documents submitted by Machewski, his own statement to the company, he also said, when he was asked about the artwork that was on the schedule, he goes, you know, I'm an avid collector. I've collected a lot of artwork. This scheduled work accounts for about 60% of what I own. I've got another 40% out there. Now, where was that in his papers? Again, I don't want to get into an issue of fact, but certainly the evidence is very important. Do we know when that was collected, though? It may have been after the discharge and bankruptcy, theoretically. Within, well, it would have had to have been within a year. I can't say for absolutely sure. But $400,000 within a year of the discharge. But, again, getting to the statement of Financial Affairs, it simply asks, are you holding anything for anybody else? And this is 200 items, some of which was $7,000 or $8,000 apiece. These are not small knickknacks that would have been overlooked. That would fill a lot of space. So, to say, well, I mean, it might be one thing if there was one statue or a lamp or a family painting that was in the back room, and he went over the question, and it didn't occur to him at the time, but he had to know, and he offers no explanation in his papers as to why he did not disclose that. The other point that Maciewski makes is that, or that he argues, is that, well, I didn't gain an advantage. And according to Hamilton, that's not really the test, because in Hamilton the discharge was vacated. So he was really in a better position to say, look, I got no advantage because they found out about this and vacated my discharge. And the court said, that's not the point. You took this position, the court relied on it, and that's enough to apply judicial estoppel. So once we get to that point, which is what happened here, the bankruptcy court accepted these papers and discharged and never looked into what about this joint ownership interest that Maciewski made a claim on the way he presented his claim initially. So he did gain an advantage, certainly under Hamilton, and he'll have to live with that. I think at that point the court was able to exercise its discretion and apply the doctrine. On the matter of the insurable interest, Your Honor, I'd like to point out that I don't think Mr. Maciewski, if what he says now is true, that he had absolutely no insurable interest, these items belonged exclusively to his grandparents. I think counsel, as I understand his argument, it's slightly different than that. I understand him to be saying that there is kind of a netherworld, that there is an interest great enough to require listing on the bankruptcy schedule as property that you own, but that there's some lesser interest under state law that's insurable but isn't big enough to be required to be listed under federal law, apart from the possession piece that you were talking about. At least that's how I understand his argument. What's your response to that? Well, if that's his argument, then he's wrong. The California Insurance Code, Section 283, says that a mere contingent or expectant interest, which is what he seems to classify this as, is not insurable unless it's founded on an actual right or a contract to it. For instance, if I put a down payment on an item and have a signed contract, I can go insure it, which then brings up the question, what's the extent of my insurable interest? Again, that would be, how much am I going to lose by its destruction? But in this case, if all he has is this hope of one day inheriting it... Well, he's got possession plus what he claims to be an expectancy. Is that insurable? I don't think so. Not according to the California statutes. You have to have something more. If this loss occurred as he claims, it was stolen from him, who suffered the loss? It was his grandparents. It's theirs. They could give it away at any time. What about his mother? She stands in line. He has not said where his expectancy comes from, other than it belongs to my grandparents. What about his mother's right to sell it or encumber it? Same with his grandparents. He has none and they do. What is the extent of his loss as opposed to theirs? Well, if he's the bailey, does he and I have an obligation to pay those funds over to the true owner? I mean, if I had a valuable asset from my parents and they said, well, no, you keep this for now and you'll inherit it eventually, but you've got to keep it safely. Now, when I go to the insurance company and say, God, I've got to insure this, what would the insurance company say? Well, hopefully they would ask if you're the owner. No, I've told them I'm not the owner. I've got possession of it. And I've got to keep it safe for my parents. I don't know. If they agree to do something, fine. But I don't believe you have an insurable interest. And I'll tell you why. If I were to lose something that I'm holding for somebody else, if somebody breaks into my apartment and steals it, and they come to me and say, hey, pay me the value of my property, I could tell them this is a liability issue. It's not my fault. Go after whoever took this property. I'm not paying for it. I'm not legally obligated to pay for it. I may cover myself with liability insurance, but this is a property insurance matter. If they want to cover their property, they can insure it. That's what the law is. People who are not in possession of their own property can insure it? I know from personal experience the insurance company is not very happy about that. Well, again, it depends. And I can't say that any company is going to do it under the circumstances. I know certainly with auto insurance, they look at where is the car garaged or something like that. But whether as a matter of law you can insure it, if the company is willing to do it is something else. But here, under California law, to have an insurable interest, because I would pose the question, what is Machevsky's loss, if it's his grandparents who suffered it? Again, that's the Sisters of Preservation case, where they say, well, as a practical matter, you haven't suffered any financial loss. He has no right to this. What if the grandparents go into bankruptcy now? That all goes into their estate, into their creditors, and he's got nothing. This is a purely – the way Machevsky presents this on appeal, as opposed to the way he presented it to us when he suffered the loss, is he's saying, I have absolutely no interest in this other than the hope of inheriting it someday. Certainly to the extent that he tries to say, well, just the simple fact that possession alone gives me some other – So your position is, if he owned it, then he had to tell the bankruptcy court about it and didn't. So judicial estoppel applies. But if he didn't own it, then he can't insure it, so you still don't owe him any money. Well, I'm saying more than that. I'm saying whether he owned it or not, he had to tell the bankruptcy court. If he owned it, he had to list it on his Schedule B. If he didn't own it, he had to disclose his possession of it in the Statement of Financial Affairs. He was asked both times under oath which of these applies, and he said neither. In terms of the insurable interest, I'm saying if he owned it, then by law that insurable interest was transferred to the trustee. If he owned part of it, whatever the value of that partial ownership interest was transferred to the bankruptcy trustee. That's the part that loses me, because the loss occurred after the discharge in bankruptcy. So how did it get transferred to the bankruptcy trustee? It was transferred. Whatever interest he had as of the time he filed for bankruptcy was transferred to the trustee, and nothing changed between then and the time of the loss. So he didn't say, after my discharge, my grandparents then gave me the artwork. He's saying, no, I had all this, the same interest that I'm making a claim on, I had it at the time I filed for bankruptcy. So whatever interest that was, if it was insurable, went to the trustee. Now he's saying I had absolutely no interest because all it was was something that didn't belong to me and I was going to inherit it later, then fine. He has no insurable interest on the date of loss because nothing changed after that. He didn't say, well, then afterwards my grandparents said, here's the title to the artwork. He didn't have an insurable interest. There's no way he could have had an interest with value that could be insured as of the time of the bankruptcy that that wouldn't have gone to the trustee, and if he didn't have that, then he had no insurable interest. So whether you look at this purely under estoppel he loses or purely as a matter of insurable interest, he doesn't have that either because it's got to be insurable interest on the day of the loss. Is the policy in evidence? Yes, it is, Your Honor. And in fact, it does say, I believe the policy says that we will insure you to the extent of your interest in the property. But it is in the record. I have, I think, the excerpts of the record, let's see, 119 to 134 is the listing and I think it's somewhat before that, the policy itself. But so again, Your Honor, what our position is, whether you take this simply as a judicial estoppel issue or an insurable interest, either one justifies summary judgment on both the complaint and counterclaim. The other points that we did have in our brief had to do with, well, if we could somehow get beyond that, the matter of bad faith and not simply writing a check out. There was a genuine dispute. And certainly, obviously, there was. Again, part of the problem I have, which validates the idea of this being a genuine dispute, is I have not heard McCheskey at any time in this identifying any type of interest he could have had in this property that was actually of value that could be insured to him as opposed to the owner of the property that would not have been transferred to the bankruptcy trustee before the loss. And once that transfer occurred, he lost it. He did not have it on the date of loss. And under California law, he cannot recover it. Unless the panel has any other questions. I don't think we do. Thank you. Thank you. You have some rebuttal time remaining, Mr. Kampen. I didn't hear what you just said. I said you have some rebuttal time left. Let me just respond to his argument, because basically he's arguing no insurable interest. I mean, the fact is, in McCheskey's affidavit, he says, I told the insurance agent I paid eight years of premiums based on the fact I told him they were heirlooms belonging to my grandmother, and I do have possession of them. And California law clearly says an insurable interest of property may consist of an expectancy, which is an expectancy of a future interest, coupled with an existing interest in that out of which the expectancy arises. It's clearly here he has a possession. His grandmother and his mother are giving him possession of these items. He clearly has an expectancy. It doesn't mean it's got to be a sure thing. Expectancy is a contingent kind of theory of life. And he has an existing interest, which is possession. And people insure that all the time, as to a future interest as well as an existing interest. The fact that the insurable interest can be thwarted by the mother or the grandmother dishing it out to other people does not rule out the fact that he has an insurable interest. And I think that's, I mean, to make their position that he has no insurable interest is just contrary to California law and is basically, in my opinion, the key to their argument. Because there is absolutely, they agree with me on the insurance contract fortuitously. I mean, because it wasn't raised and I didn't think it was a huge issue. But as far as whether or not he gained an unfair advantage, they have no unfair advantage. Because basically their argument is, let's say Machevsky's right. It belonged to my mother and my grandmother. I was a holder of this. The issue then becomes, does he have an insurable interest? And clearly he does under California law. Clearly he does. Clearly the, and even added to that, the insurance company not only takes his premiums before, on the basis he tells them who he is, and this is heirlooms that belonged to his grandmother, and they photograph each one. This isn't one where he's just saying there may be some items. They take photographs of each one. He tells them that he came from an old country with his grandmother and his mother, and they took his premiums that way. Secondly, that at the time of the loss, I mean, well, that means the insurance company knew what they were doing. And I can't see you saying, well, yeah, we took his money for eight years, but now we don't think he has an insurable interest, even though we knew at the time that they were heirlooms of the family and didn't ask him if he had bought them from the mother and so forth. As far as judicial estoppel goes, two things. One, I believe the law is still that it has to gain an advantage, which obviously it didn't, because if it doesn't belong to him, obviously the trustee has no interest, even though he has an insurable interest, which is where the argument really comes down. And secondly, that I think you need bad faith, a bad motive. It's not enough to go to a paralegal and say, you know, this isn't mine, it's my mother's. Do I have to list it? Paralegal says no. He actually leaves that part blank. He doesn't even check that spot. And now we're going to hold it against him. I don't believe that's what judicial estoppel is meant to do. What judicial estoppel is meant to do is to take undeterred... Excuse me, counsel. I don't think he actually left it blank. I believe that he answered none. All right. Well, let's assume he answered none. And he did so under a mistaken idea that he didn't need to list it because he was told by... You know, in this city there's a million paralegals practicing bankruptcy law, and 80% of the people go to paralegals because they don't have the money to go to lawyers. And Chapter 7s and 13s are done all day long by individuals without a whole lot of training. But the wording on the schedule is pretty clear. I agree he made a mistake. The question is, and so if you indicate that it's a mistake that he intentionally made, and the artwork doesn't, I mean, assuming... I mean, he indicates in his affidavit it wasn't intentionally made, so I think that's for the trier of fact in a jury to determine whether he did it intentionally or unintentionally, number one. But assuming you get over that hurdle that it was intentionally made, what advantage did he gain if it isn't his? And the answer is none, other than a different form determining whether he owns it or doesn't own it. Correct? I mean, that's how I analyze those two issues. I'll answer any other questions. But assuming even if he does, if you find that he intentionally made that mark and didn't disclose it, he still doesn't gain an advantage because the case they cite that say they gain an advantage is a case where they gain an automatic stay, which is the Hamilton case. An automatic stay is an advantage because you're not going to get your property foreclosed out. But in this particular case, there is no stay or not stay. There's nothing to gain, and that's what distinguishes it from Hamilton. Thank you, counsel. We appreciate the arguments of both parties, and the case just argued is submitted.
judges: B. Fletcher, Boochever, Graber